UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAUDESS M. SUTTON, Personal
Representative of the Estate of DAVID
A. WARE, Deceased,

    Plaintiff,

-vs-

Case No. 07-12658
HON. AVERN COHN

URIAH HAMILTON,

    Defendant.
_____/

**MEMORANDUM AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

### I. Introduction

This is a civil rights case under 42 U.S.C. § 1983 with pendant state claims. Defendant Uriah Hamilton (Hamilton) is a police officer for the City of Ypsilanti, Michigan. Plaintiff Maudess M. Sutton (Sutton), personal representative of the estate of David Ware, claims Hamilton violated the constitutional rights of her son David Ware (Ware) by shooting him in the back three times when he was fleeing the scene of a "drug buy bust." Ware died soon after he was taken to an emergency room.

The complaint is in four counts:

(I)    42 U.S.C. § 1983 Claim for Unreasonable Seizure as to Hamilton;

(II)    Violation of 42 U.S.C. § 1983 as to the City of Ypsilanti;[1]

(III)    Gross Negligence as to Hamilton; and

---

[1] Count II has been voluntarily dismissed and the City of Ypsilanti was removed as a defendant (Doc. 25).

    (IV)    Assault and Battery as to Hamilton.

Hamilton is sued in his individual capacity.

Now before the Court is defendant's motion for summary judgment on grounds of (1) qualified immunity under the § 1983 claim, (2) governmental immunity and improper pleading under the gross negligence claim and (3) governmental immunity under the assault and battery claim. Hamilton says his use of lethal force was justified. For the reasons that follow, the motion is GRANTED as to Count III and DENIED as to Counts I and IV.

## II. FACTS

The facts are from the parties' papers and exhibits, including the depositions of:

- Hamilton;

- Lieutenant Jerry Cooley (Cooley) of LawNet, an undercover narcotics task force operating under the authority of the Michigan State Police;

- Samuel Wallace (Wallace), a Washtenaw County sheriff's deputy and LawNet detective;

- Maurice Moore (Moore), Ware's second cousin;

- Jeffrey McCullough (McCullough), a 17-year-old eyewitness; and

- Dr. Bader Cassin (Cassin), Washtenaw County Medical Examiner.

Cooley and Wallace promoted an undercover cocaine buy between Freddie Stone (Stone), an informant drug dealer, and Ware, whom Wallace knew from his days in uniform to be a drug dealer. Hamilton was aware of Ware's reputation as a drug dealer and had viewed a homemade rap video in which Ware pulled a gun from his waistband.[2]

---

[2] Hamilton also had vague recollections that an officer from another police department had come to their office and talked about Ware's being connected somehow

Hamilton, dressed in street clothes and wearing a radio transmitter, rode with Stone in Stone's truck to make the buy on the night of January 23, 2007. Stone pulled in and parked at the agreed-upon location for the buy, the Keg Party Store on North Huron River Drive (Huron) in Ypsilanti. Wallace followed Stone and Hamilton in a black Chrysler minivan and parked close enough to see them from his rearview mirror. Cooley was in plain clothes in an unmarked vehicle.[3]

Soon Moore with Ware in a green Dodge Intrepid backed in beside Stone's truck. Stone got in the back of the Intrepid to make the buy while Hamilton observed from the truck. Stone and Ware appeared to be involved in a drug sale. Over the radio Cooley ordered the police officers to pull in and apprehend the two.

In response to Cooley's order, Wallace immediately pulled his van up to within three feet of the driver's side bumper of Moore's car. Wallace got out, drawing his gun. Hamilton opened the passenger door to the truck. At the same time Ware opened the passenger door to the Intrepid. They blocked each other in. As Moore began driving away,[4] Wallace "dove to the right" to avoid being hit and fired three shots into the driver's window. Hamilton said when he heard the shots he ducked down in the truck. The Intrepid traveled

---

to a homicide investigation, but he did not recall this information when he wrote his report of the incident at issue.

[3] Neither party has filed the page from Cooley's deposition supporting this statement.

[4] Moore said he thought Wallace was attempting a carjacking so he tried to escape by driving forward between Wallace and the van. Wallace was wearing a mask that concealed his face, blue jeans, and a black shirt that said "Police" in yellow letters. Moore says he could not see any writing on the shirt because of Wallace's outstretched arms with the drawn gun. He also says his windows were up and the radio was going; if Wallace yelled "police" he did not hear it.

about ten to twenty feet before Cooley blocked it inside the parking lot. Wallace, recovering from his dive to the ground, yelled at the occupants to get out of the car. He saw Moore get out with his hands up and drop to the ground. He saw Ware get out of the car, look back over his right shoulder with both hands down toward his waistband area, then extend his right hand and throw a plastic baggy away, which Wallace suspected contained crack cocaine. By this time Wallace was back on his feet and yelling, "police, get down." Cooley yelled "police." Ware began running. Cooley yelled "don't make me shoot." Wallace gave chase but was slowed down by a slip on the ice.

Hamilton said when the shots stopped, he got out of the truck, did not see Wallace, saw Ware running away, and thought Ware had shot Wallace.

Ware ran across three lanes of traffic on Huron onto Arcade Street with Hamilton, Wallace, and Cooley in pursuit on foot. Hamilton said he was "a couple of car lengths" behind Ware. Wallace said he was "probably about ten to fifteen yards" behind Hamilton in "[a]lmost a line up perfect" to Ware. Wallace said Hamilton was more to the right. Cooley, deterred by the traffic on Huron, was farther back. He heard both Hamilton and Wallace yelling "stop, police." He "guess[ed]" Hamilton and Wallace were within ten feet of each other. McCullough, who observed the chase from his home in the first block of Arcade Street off Huron, said the two "were like next to each other, chasing after [Ware]." McCullough heard one of the officers yell "stop" but did not hear him identify himself as police. He also heard Ware yell something but could not make out what he said.

Hamilton said he would have recognized Wallace's voice. He said he did not see or hear Wallace.

Wallace saw Ware's right arm "swinging freely" and "felt" that his left hand was "in

4

his waistband area." Wallace said he saw Ware looking back over his shoulder. Wallace did not see a weapon and did not feel he was in imminent danger so he did not fire his gun. McCullough said Ware "ran straight down the street" and he was "positive" Ware did not look back over his shoulder. He "saw the front of Ware the whole time he was running." McCullough said Ware "was just running."

Hamilton said he saw Ware look back over his right shoulder and saw Ware's hand "reach[] into his waistband." He said, "I think it's his right hand." He later said that he did not know if he actually saw Ware's hand.

Hamilton fired three times. Wallace said the shots were "almost instantaneous." Dr. Levon T. O'Haodha, who lived across the street from McCullough, stated in an affidavit that he was taking out the garbage when he heard shots followed by the words, "Shoot him!"

Ware went down. Cooley ran past Wallace. There is no indication in the record that Hamilton warned Cooley or Wallace upon their approach of Ware that Ware was armed.[5] Wallace said Ware was on his stomach and Cooley turned him over, at which point money flew out of his left hand.[6]

Ware died soon after being transported to St. Joseph Hospital. Cassin performed an autopsy and determined that Ware had been shot three times. Cassin said that only one wound was fatal. The fatal bullet entered the right side of his back while he was upright. The other two bullets probably entered from the front when he was supine. The lethal bullet entered "virtually horizontally" through the fourth thoracic vertebra, broke the

---

[5] In fact, Ware was not armed.

[6] A chart of facts submitted by Hamilton cites Cooley's testimony that he found Ware on his back with arms outstretched and money near his right hand.

subclavian artery just to the left of center, and ended up in the left lung. Cassin said the angle of the bullet could be consistent with Ware's having turned to look over his shoulder. He also said another plausible explanation is that Ware did not necessarily turn but the shooter fired from an angle that caused the entrance wound.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

### IV. ANALYSIS

#### A. Unreasonable Seizure

#### 1. The Law

Sutton claims Hamilton unreasonably seized Ware by shooting him. If Sutton demonstrates the existence of a genuine issue of fact, the Court must determine whether that fact is material. The Court must consider a disputed fact material and deny summary

judgment when, in light of the law of the case, that fact is outcome determinative. Sova v. City of Mount Pleasant, 142 F.3d 898, 903 (6th Cir. 1998) ("Where . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."); Bouggess v. Mattingly, 482 F.3d 886. 888 (6th Cir. 2007). In contrast, if a disputed fact has no bearing on the outcome of the case, it is not material and will not preclude summary judgment. Because Sutton seeks § 1983 relief against Hamilton as a state official, she must overcome his claim to qualified immunity by showing that (1) the facts alleged, taken in the light most favorable to her, show Hamilton's conduct violated a constitutional right of Ware and (2) the right was clearly established, that is, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (internal quotation marks omitted).[7]

It is unreasonable for a police officer to seize an unarmed, non-dangerous suspect by using deadly force. Tennessee v. Garner, 471 U.S. 1, 11 (1985). An officer may not use deadly force against a person unless "the officer has probable cause to believe that the [citizen] poses a significant threat of death or serious physical injury to the officer or others." Id. at 3. In applying Garner, the Sixth Circuit considers the following "nonexhaustive" factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting

---

[7] The order in which the inquiry proceeds, given above as specified by Saucier, is no longer required. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

arrest or attempting to evade arrest by flight." Bouggess, 482 F.3d at 889. An officer's conduct should be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ." Graham v. Connor, 490 U.S. 386, 396 (1989). The analysis makes "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 397. However, "[e]ven a split-second decision, if sufficiently wrong, may not be protected by qualified immunity." Bouggess, 482 F.3d at 894. "[W]hen 'the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury,' the 'jury becomes the final arbiter of [a] claim of immunity.'" Id. at 888 (second alteration in original) (quoting Brandenburg v. Cureton, 882 F.2d 211, 215–16) (6th Cir. 1989)).

### 2. Discussion

#### a. No Probable Cause

**1.**

"[I]f the suspect threatens the officer with a weapon or there is probable cause to believe that he has . . . inflict[ed] or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." Garner, 471 U.S. at 11. "Absent such probable cause, however, a police officer may not seize a fleeing felon by employing deadly force." Bouggess, 482 F.3d at 889.

The question is: Did Hamilton have probable cause to believe that Ware posed a serious danger to him or others while Ware was running away from the scene of a cocaine-

buy bust? "[T]he test . . . under the Fourth Amendment is not capable of precise definition or mechanical application, . . . its proper application requires careful attention to the facts and circumstances of each particular case." Graham, 480 U.S. at 386 (citations omitted). Here there are conflicting views of the most critical factual issues regarding probable cause: whether Ware turned back toward Hamilton as he ran and whether Ware reached for his waistband. When faced with conflicting viewpoints on a motion for summary judgment, the facts must be construed in the light most favorable to the nonmovant, Sutton. Under that viewpoint there is sufficient probative evidence to support a jury's finding that Hamilton did not have probable cause.

In a light most favorable to Sutton, the facts are as follows. Ware fled the scene of the cocaine buy-bust after gunshots were fired at his car. He ran across Huron and down Arcade Street, followed by Hamilton and Wallace. According to McCullough's testimony, Ware neither turned back toward the officers nor reached down toward his waistband in the moments preceding the gunshot. After Ware was told to stop, he was shot by Hamilton. Wallace testified that, when Ware was shot, Wallace was directly behind Ware and that Hamilton was located to his right.

**2.**

Hamilton says that, despite the factual dispute between eyewitnesses, there is no genuine issue of material fact because the forensic evidence provided by Cassin supports Hamilton's version of the facts.[8] He is mistaken. Even if forensic evidence were to be

---

[8] Hamilton sought to show a videotape of Cassin's testimony at the motion hearing despite the Court's concern that to do so would invade the jury's role in finding facts and assessing credibility. Hamilton relied on Scott v. Harris, 550 U.S. 372 (2007) in which the Supreme Court viewed video footage of a high-speed police chase when

9

given conclusive weight in deciding eyewitness disputes, Cassin's findings support both Hamilton's and Sutton's versions of the facts. Cassin's forensic findings merely establish the path that the fatal bullet took through Ware's body. Cassin testified that the bullet's trajectory was right-to-left through Ware's upper body, suggesting that Ware's right shoulder was closest to Hamilton when the shot was fired. Cassin said that his findings were consistent with Hamilton's testimony that Ware was directly in front of him and turned back when the shot was fired. However, he also said that his findings were consistent with the testimony of McCullough and Wallace that Wallace was directly behind Ware with Hamilton to the right and that Ware never turned back. Because Cassin's forensic findings are consistent with both Sutton and Hamilton's version of the facts, they cannot resolve any dispute between them.

**3.**

Hamilton also says that, despite McCullough's testimony, the Court must accept as true Hamilton's testimony that he was directly behind Ware and that Ware turned back toward him while reaching to his waistband. Hamilton relies on Anderson v. Russell, 247 F.3d 125 (4th Cir. 2001), where the court disregarded an eyewitness' contradictory statement and accepted the testimony of police officers involved in a shooting. In that case, the police apprehended the plaintiff and shot him as he moved his hands from above his head toward a bulge in his waistband which the police believed was a gun. Anderson,

---

considering the police officer's claim of qualified immunity in a §1983 suit. Although Hamilton was permitted to show the video, it was not persuasive. Had Hamilton been able to produce a video of the actual flight and shooting it may have helped to resolve these factual disputes. However, since the Court may not assess Cassin's credibility, the video footage of his deposition was no more helpful than the transcript that had already been provided.

247 F.3d at 130-31. An eyewitness whose view of the plaintiffs' hands was obstructed agreed that the plaintiffs' hands were moving downward, but contradicted the police testimony regarding their position and speed. Id. The court explained that minor discrepancies are common among eyewitnesses and that this is not create a genuine issue of material fact. Id. Anderson is not applicable to the facts here because there is a dispute whether McCullough's view was obstructed and his testimony involves the key facts of the case – whether Ware turned back toward Hamilton and whether he reached to his waistband – not minor discrepancies.

**4.**

Hamilton further says that, at the time that he shot Ware, he was under the belief that Ware was in possession of a gun and had fired at other officers. Hamilton's belief was based on the fact that gunshots were fired at the scene of the cocaine buy-bust and that Wallace was no longer present after the shots were fired. Even if his subjective belief is fully credited, Hamilton did not have probable cause to shoot Ware. "Whether the use of deadly force at a particular moment is reasonable depends primarily on objective assessment of the danger a suspect poses at that moment." Bouggess, 482 F.3d at 889. Viewed in a light most favorable to Sutton, Ware was fleeing from the police officers and was not engaged in any activity that posed a threat of harm to the officers or others at the moment he was shot. The Sixth Circuit has stated:

> [i]t cannot reasonably be contended that physically resisting arrest, without evidence of the employment or drawing of a deadly weapon, and without evidence of any intention on the suspect's part to seriously harm the officer, could constitute probable cause that the suspect poses an imminent danger of *serious* physical harm to the officer or others. Cf. Garner, 471 U.S. at 11 ("It is not better that all felony suspects die than that they escape.").

11

Id. 891.  In a light most favorable to Sutton, Ware was merely fleeing, not even resisting arrest. He did not look back at the officers. He did not reach for a weapon.  On this version of the facts, there is no probable cause that Ware posed "an imminent danger of *serious* physical harm" to the officer or others when he was shot.

Hamilton's erroneous belief that Ware was armed and had shot Wallace is not sufficient to create probable cause when Ware was fleeing at the time he was shot.  In Dickerson v. McClellan, 101 F.3d 1151(6th Cir. 1996), police officers shot and killed Joel Dickerson (Dickerson) after responding to a call that Dickerson was armed and had fired at least nine shots before the police arrived.  Dickerson, 101 F.3d at 1154-55.  As in this case, the events surrounding the shooting were disputed, but eyewitnesses said that Dickerson was walking toward the front door when he was shot by the officers.  Id.  The Sixth Circuit found that, despite actual knowledge that Dickerson was armed and willing to shoot, there was not probable cause to shoot him when he merely walked to the front door with his hands at his sides.  Id. at 1163.  Under the reasoning in Dickerson Hamilton's suspicion that Ware was armed and had shot at Wallace is not sufficient to create probable cause.  When the facts are viewed in a light most favorable to Sutton,  Ware posed no threat of harm when he was shot.

**5.**

Hamilton also asserts that probable cause may exist to shoot a suspected felon who is unarmed and fleeing if there is a reason to believe that he poses an immediate threat to himself or others. While this legal premise may be true, it cannot be applied to Ware, who posed no threat to anyone as he ran down Arcade Street. The cases cited by Hamilton all involve suspects recklessly fleeing in an automobile, an inherently dangerous situation even when the suspect is not otherwise armed. Brosseau v. Haugen, 543 U.S. 194 (2004) (suspect fled in a car with bystanders and police officers in its path); Dudley v. Eden, 260 F.3d 722 (6th Cir. 2001) (suspect fled police by driving recklessly into street after robbing a bank); Smith v. Freland, 954 F.2d 343 (6th Cir. 1992) (suspect lead police on a high-speed chase). Unlike those suspects who fled in automobiles, Ware's flight on foot did not create a risk of harm sufficient to justify the use of deadly force against him.

### b. Clearly Established Right

Was Ware's right to be free of unreasonable seizure clearly established on the date Hamilton shot him? Put another way, could Hamilton reasonably have thought that he had probable cause to believe that Ware posed a serious danger to him or others? See Bouggess, 482 F.3d at 894. Again viewing the facts in the light most favorable to Sutton, there is sufficient probative evidence to support a jury's finding that Hamilton could not have reasonably thought he had probable cause.

Ware was engaged in a cocaine buy. He fled on foot only after the car in which he was seated was fired upon by Wallace. He did not utter any threats against Hamilton or anyone else. He did not draw a weapon. He was shot in the back. Ware posed no risk of harm to Hamilton or anyone else as he fled. Under these circumstances it is clearly

13

established that the police may not use deadly force to apprehend a suspect.

### B. Gross Negligence

Michigan courts do not allow a plaintiff to premise a negligence claim on an intentional tort. VanVorous v. Burmeister, 262 Mich. App. 467, 483–84 (2004). Sutton brings an action for assault and battery. She does not plead in the alternative, and there is no suggestion in either party's papers or in the record that the shooting was unintentional. Accordingly, Hamilton is entitled to summary judgment with respect to the gross negligence claim.

### C. Assault and Battery

Under Michigan law, a government employee is not immune from liability for an intentional tort, including assault and battery. Sudul v. Hamtramck, 221 Mich. App. 455, 458 (1997). Assault is "an intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." VanVorous, 262 Mich. App. at 482–83 (internal quotation marks omitted) (quoting Espinoza v. Thomas, 189 Mich. App. 110, 119 (1991)). Battery is "a wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." Id. at 483 (internal quotation marks omitted) (quoting Espinoza v. Thomas, 189 Mich. App. 110, 119 (1991)). A police officer making an arrest may use reasonable force. Id. at 480. The force reasonably necessary is the measure of force that "an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. Thus, the standard is an objective one under the circumstances." Id. at 481 (internal quotation marks omitted)

(quoting Brewer v. Perrin, 132 Mich. App. 520, 528 (1984)).

Because, as discussed above under Unreasonable Seizure, Sutton has raised genuine issues of material fact as to the reasonableness of Hamilton's actions, whether his threat and execution of lethal force were reasonable under the circumstances are likewise fact questions for the jury.

Defendants cite Michigan's common law and statutory wrongful conduct rule, which bars a plaintiff's claim if it is based in whole or part on his own illegal conduct. M.C.L. 600.2955b (2000); Orzel v. Scott Drug Co., 449 Mich. 550, 557 (1995). Sutton does not address this argument in her response. Nevertheless, none of the cases defendants cite dealt with intentional acts. Robinson v. Detroit, 462 Mich. 439, 447–50 (2000) (claims for gross negligence by passengers of stolen vehicle injured as result of police chase where passengers were complicit in the theft); Orzel, 449 Mich. at 551–57 (negligence action against pharmacy and others for supplying plaintiff with schedule II controlled substances that caused addictions and mental illness where plaintiff misrepresented his medical condition in order to obtain prescriptions); Brassell v. Laban, 2006 WL 782163, at *2 (Mich. Ct. App. Mar. 28, 2006) (claims for assault and battery by plaintiff injured by police vehicle while fleeing scene of theft on foot where there was no evidence that police officer intentionally struck plaintiff and plaintiff did not know how the accident occurred). Further, defendants ignore subsection (2) of M.C.L. 600.2955b, which provides that if the bodily injury or death resulted from force, the court shall not apply the wrongful conduct rule unless the degree of force used was reasonable. Thus, the material questions again come down to the reasonableness of Hamilton's actions.

## V. CONCLUSION

15

For the reasons above, Count III is DISMISSED. The case must go forward on Sutton's § 1983 claim for unreasonable seizure and her state claims for assault and battery, all against Hamilton in his individual capacity.

SO ORDERED.

          s/ Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE

Dated: September 16, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 16, 2009, by electronic and/or ordinary mail.

          s/ Julie Owens
          Case Manager, (313) 234-5160